[No. S111253. Jan. 8, 2004.]

DANIEL L. MacDONALD, Plaintiff and Respondent, v.
CHON GUTIERREZ, as Interim Director, etc., Defendant and Appellant.

**COUNSEL**

Bill Lockyer, Attorney General, Andrea Lynn Hoch and Jacob A. Appelsmith, Assistant Attorneys General, Elizabeth Hong and Michelle Logan-Stern, Deputy Attorneys General, for Defendant and Appellant.

Law Offices of Ronald A. Jackson and Ronald A. Jackson for Plaintiff and Respondent.

**OPINION**

**BROWN, J.**—Upon arresting someone for driving under the influence of alcohol or drugs, the *arresting* officer is required to make a *sworn* statement to the Department of Motor Vehicles (DMV) setting out all of the relevant

information.[1] In *Lake v. Reed* (1997) 16 Cal.4th 448 [65 Cal.Rptr.2d 860, 940 P.2d 311] (*Lake*), we held that, notwithstanding the predecessor statute to section 13380, an *unsworn* statement by a *nonarresting* officer is admissible, pursuant to the public employee record exception to the hearsay rule, at an "administrative per se" review hearing conducted by the DMV. (*Lake*, at p. 461.) The question presented by this case is whether, at such a hearing, the DMV may, in addition to considering the arresting officer's sworn statement, also consider an *unsworn* statement by the *arresting* officer. The DMV, we conclude, may properly do so, for section 13557 provides in pertinent part: "The department shall consider the sworn report submitted by the peace officer pursuant to Section 23612 or 13380 *and any other evidence accompanying the report.*" (Italics added.)

## FACTUAL AND PROCEDURAL BACKGROUND[2]

A California Highway Patrol (CHP) officer observed Daniel L. MacDonald, who was driving in the No. 5 lane on a freeway, encroach two feet into the No. 4 lane, and then slowly drift five feet onto the shoulder. When the officer stopped MacDonald, he observed that MacDonald's eyes were red and watery, his speech thick and slurred, and an odor of alcohol was emanating from his breath. MacDonald admitted he had been drinking. He failed several standard field sobriety tests, and upon being transported to a police station, his blood-alcohol concentration twice tested at .11 percent.[3] The officer issued an administrative per se suspension order, confiscated MacDonald's driver's license, and issued him a temporary license.

---

[1] "(a) If a peace officer . . . arrests any person for a violation of Section 23140, 23152, or 23153 [driving under the influence], the peace officer shall immediately forward to the department a *sworn* report of *all information relevant to the enforcement action,* including information that adequately identifies the person, a statement of the officer's grounds for belief that the person violated [the statute], a report of the results of any chemical tests that were conducted on the person . . . , a copy of any notice to appear under which the person was released from custody, and, if immediately available, a copy of the complaint filed with the court. For the purposes of this section, . . .'immediately' means on or before the end of the fifth ordinary business day following the arrest . . . . [¶] (b) The peace officer's sworn report shall be made on forms furnished or approved by the department. [¶] (c) For the purposes of this section, a report prepared pursuant to subdivision (a) and received pursuant to subdivision (a) of Section 1801, is a sworn report when it bears an entry identifying the maker of the document or a signature that has been affixed by means of an electronic device approved by the department." (Veh. Code, § 13380, italics added; hereafter all further statutory references are to the Vehicle Code unless otherwise indicated.)

[2] This statement of the factual and procedural background is largely drawn from the opinion below. Neither party petitioned for rehearing to suggest that the Court of Appeal omitted or misstated any material fact. (Cal. Rules of Court, rule 28(c)(2).)

[3] A blood-alcohol concentration of .08 percent is a ground for suspension of the driving privilege. (§ 13353.2, subd. (a)(1).)

On the date of the incident, the arresting officer completed a sworn report on DMV form 367. With respect to the facts and circumstances which led to the stop, he wrote: "OBS, S/V [subject vehicle] DRIVING W/B 101 DESOTO TO TOPANGA WEAVING SIDE TO SIDE IN W-1 LANE—STOP MADE."

On the same date, the officer completed a "Driving Under the Influence Arrest/Investigation Report" (CHP form 202) and the narrative/supplement report (CHP form 556). These two reports, which we will refer to collectively as the "unsworn report," and which we have summarized in the first paragraph of this statement of the factual and procedural background, provided a more detailed narrative of the circumstances leading to the stop and arrest, but were not sworn.

MacDonald requested an administrative hearing to review his license suspension. (§ 13558, subd. (a).) At the hearing, MacDonald's counsel objected to the unsworn report, contending an unsworn report by the arresting officer is inadmissible hearsay. The hearing officer overruled the objection and sustained the license suspension.

MacDonald petitioned for writ of mandate to set aside the suspension. (Code Civ. Proc., § 1094.5.) The petition was granted. Relying on *Solovij v. Gourley* (2001) 87 Cal.App.4th 1229 [105 Cal.Rptr.2d 278] (*Solovij*), the superior court held the unsworn report was inadmissible under section 13380, and the sworn report alone failed to provide reasonable cause for the stop.

Concluding *Solovij* was wrongly decided, the Court of Appeal reversed with directions to reinstate the suspension. "*Solovij* erred in fashioning an exclusionary rule which precludes the DMV from considering an arresting officer's *unsworn* report on the ground the arresting officer's sworn report was inadequate. Although section 13380 requires the *arresting* officer to send the DMV a *sworn* report of all information relevant to the enforcement action (§ 13380, subd. (a)), the statute does not specify a penalty or consequence for the officer's failure properly to fill out the sworn report (see *ibid.*), and specifically does not require the result reached in *Solovij*, a decision which appears to be contrary to the intent and spirit of the administrative per se law."

We agree with the Court of Appeal, and, accordingly, we affirm its judgment.

## Discussion

In *Lake, supra*, 16 Cal.4th 448, we described in detail the statutory framework of the administrative per se law, and we will briefly reiterate that discussion insofar as it is required for understanding the related issue presented by this case.

██ Under the administrative per se law, the DMV must immediately suspend the driver's license of a person who is driving with .08 percent or more, by weight, of alcohol in his or her blood. (§ 13353.2, subd. (a)(1).) The procedure is called "administrative per se" because it does not impose criminal penalties, but simply suspends a person's driver's license as an administrative matter upon a showing the person was arrested for driving with a certain blood-alcohol concentration, without additional evidence of impairment. (*Lake, supra*, 16 Cal.4th at p. 454, fn. 1.) The express legislative purposes of the administrative suspension procedure are: (1) to provide safety to persons using the highways by quickly suspending the driving privilege of persons who drive with excessive blood-alcohol levels; (2) to guard against erroneous deprivation by providing a prompt administrative review of the suspension; and (3) to place no restriction on the ability of a prosecutor to pursue related criminal actions. (*Id.* at p. 454; *Gikas v. Zolin* (1993) 6 Cal.4th 841, 847 [25 Cal.Rptr.2d 500, 863 P.2d 745].)

The administrative per se laws were deemed necessary due to the time lag that often occurs between an arrest and a conviction for driving while intoxicated or with a prohibited blood-alcohol concentration. During this interim period, arrestees who would eventually be convicted of an intoxication-related driving offense were permitted to continue driving and, possibly, endangering the public. Moreover, without administrative per se laws, persons with extremely high blood-alcohol concentration levels at the time of arrest could escape license suspension or revocation by plea bargaining to lesser crimes or entering pretrial diversion. Thus, by providing for an administrative license suspension prior to the criminal proceeding, the law affords the public added protection. (*Lake, supra*, 16 Cal.4th at pp. 454–455.)

██ Under the administrative per se law, when a person is arrested for driving under the influence and is determined to have a prohibited blood-alcohol concentration, the arresting officer or the DMV serves the person with a notice of order of suspension. (§§ 13353.2, subds. (b), (c), 13382; *Lake, supra*, 16 Cal.4th at p. 455.) The notice informs the driver the license suspension will be effective 30 days from the date of service, states the reason and statutory grounds for the suspension, and explains the driver's right to seek an administrative hearing. (§§ 13353.2, subd. (c), 13353.3, subd. (a).)

■ After the arresting officer serves a driver with the notice of order of license suspension, the DMV conducts an automatic internal review of the merits of the suspension. (§ 13557, subd. (a); *Lake, supra*, 16 Cal.4th at p. 455.) In its review, the DMV considers the sworn report submitted by the peace officer and any other evidence accompanying the report. (§ 13557, subd. (a).)

■ In addition to the automatic internal review, the driver may request a hearing, in which case the DMV holds a contested review hearing on its decision to suspend a license. (§ 13558, subd. (a).) "The rules potentially governing the evidence available for use in such hearings are set forth in division 6, chapter 3, article 3 of the Vehicle Code, commencing with section 14100. [Citation.] Two provisions are especially relevant. First, section 14104.7 states in pertinent part: 'At any hearing, the department shall consider its official records and may receive *sworn testimony*.' Second, for all matters not specifically covered by division 6, chapter 3, article 3 of the Vehicle Code, section 14112 incorporates the provisions of the Administrative Procedures Act governing administrative hearings generally." (*Lake, supra*, 16 Cal.4th at p. 458.)

Government Code section 11513 addresses the admissibility of evidence in administrative hearings. It states in relevant part: "The hearing need not be conducted according to technical rules relating to evidence and witnesses, except as hereinafter provided. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions." (Gov. Code, § 11513, subd. (c).)

In *Solovij, supra*, 87 Cal.App.4th 1229, the DMV suspended Solovij's license for driving with a blood-alcohol level of .08 percent or more. The administrative hearing officer considered both sworn and unsworn reports submitted by the arresting officer. The trial court granted Solovij's petition for writ of mandate on the ground there was no competent evidence in the sworn report to justify the initial stop and detention. The Court of Appeal affirmed, concluding that "without a sworn report containing competent evidence the officer's unsworn report cannot supply the missing competent evidence." (*Id.* at p. 1231.)

The *Solovij* court distinguished *Lake*. "Here the question is whether the DMV properly considered the unsworn report of the *arresting* officer." (*Solovij, supra*, 87 Cal.App.4th at p. 1234, italics added.) The *Solovij* court acknowledged that the DMV's "reliance on the arresting officer's unsworn report does not involve the hearsay rule. The unsworn report of the arresting

officer is just as much a public employee record as the unsworn report of the nonarresting officer found admissible in *Lake*." (*Ibid.*) "The problem," in the *Solovij* court's view, was that "section 13380 expressly requires the arresting officer to file a sworn report containing 'all information relevant to the enforcement action . . . .' We presume that when the Legislature said the arresting officer must include 'all information' in a sworn report, it meant what it said. An unsworn report will not suffice. [¶] It is true that at the hearing, the DMV is not limited to a consideration of the arresting officer's sworn report. But the DMV cannot evade the statutory requirement that the arresting officer must include all information in a sworn report simply by categorizing the arresting officer's unsworn report as additional evidence. [¶] Our Supreme Court said in *Lake*: '[P]ermitting the department's hearing officer to consider and rely on [the nonarresting officer's] unsworn police report does not unfairly evade the requirement . . . that the arresting officer file a sworn report.' (*Lake v. Reed, supra,* 16 Cal.4th at p. 460.) Permitting the department's hearing officer to consider and rely on the arresting officer's unsworn report would unfairly evade that requirement." (*Solovij,* at p. 1234.)

This Court of Appeal declined to follow *Solovij*. "Here, although section 13380 provides the arresting officer 'shall' send the DMV a sworn report of all information relevant to the enforcement action, the statute does not specify a consequence for the officer's failure to properly complete the sworn report. The consequence fashioned by *Solovij* for the arresting officer's failure to perfect the sworn report is at odds with the rest of the statutory scheme, which does not limit the DMV's review to the information contained in the sworn report and allows the DMV to consider an officer's *unsworn* report which meets the conditions for admissibility. (*Lake v. Reed, supra,* 16 Cal.4th at p. 461.) [¶] Further, the *Solovij* interpretation of section 13380 thwarts, rather than advances, the express legislative purpose of the administrative per se law to protect the public ' "by quickly suspending the driving privilege of persons who drive with excessive blood-alcohol levels." ' (*Lake v. Reed, supra,* 16 Cal.4th at p. 454.) [¶] Finally, our determination that the DMV may consider the unsworn report of an *arresting* officer does not prejudice the interests of the arrestee. Regardless of whether information relevant to the enforcement action is set forth in a sworn report or an unsworn report, the statutory scheme guards against an erroneous deprivation by providing a prompt administrative review of the suspension."

In *Dibble v. Gourley* (2002) 103 Cal.App.4th 496 [126 Cal.Rptr.2d 709] (*Dibble*), the same Court of Appeal that decided *Solovij*, Division Six of the Second District, reaffirmed its holding in that case, while rejecting the contrary holding in this case by Division Three of the same district. (*Dibble,* at p. 501.) The *Dibble* court rejected "our colleagues' criticism that our interpretation of section 13380 'thwarts, rather than advances, the express legislative purpose of the administrative per se law to protect the public " 'by

quickly suspending the driving privilege of persons who drive with excessive blood-alcohol levels.' " ' (. . . [Q]uoting *Lake v. Reed, supra,* 16 Cal.4th at p. 454.) If a person successfully objects to an arresting officer's unsworn report at an administrative hearing and the sworn report is insufficient to meet the DMV's burden of proof, the DMV can call the officer to testify. (*Lake,* at p. 458; §§ 13558[,] subd. (b), 14104.7.) Although it may be more practical to allow consideration of the arresting officer's unsworn reports, the power to fashion such a rule lies exclusively with the Legislature. Of course, all of this is rendered moot and the purpose of the law satisfied if all of the relevant information is included in the officer's sworn report." (*Dibble,* at p. 502.)

The *Dibble* court is quite correct in observing that "all of this" could easily have been rendered moot. (*Dibble, supra,* 103 Cal.App.4th at p. 502.) As the *Dibble* court points out, one simple means of rendering it moot would have been by training officers to attach additional pages to their sworn DMV reports and to expressly incorporate the additional pages by reference. Section 13380, subdivision (b) calls for the arresting officer's sworn report to be made "on forms furnished or approved by [the DMV]." The problem is that the form designed by the DMV gives the arresting officer only two and one-half lines to "[d]escribe in detail the facts and circumstances that led to the stop or contact." Instead of attaching additional pages to the sworn DMV form, as the form suggests, the officers in these cases have been providing the detailed information on separate unsworn CHP forms. If, as we conclude, the plaintiffs in these cases elevate form over substance, the DMV and the CHP have themselves to blame. "Those who craft such forms—like those who prepare instructions for the assembly of children's toys or mail-order furniture—should themselves be required to use the form before imposing it on the intended user." (*Dibble,* at p. 504, fn. omitted.)

To resolve this case we must strike a balance between the two pertinent statutory provisions. While section 13380 provides that an officer making an arrest for driving under the influence of alcohol or drugs shall immediately forward to the DMV "a *sworn* report of *all information relevant to the enforcement action*" (italics added), section 13557 provides that the DMV "shall consider the sworn report submitted by the peace officer . . . *and any other evidence accompanying the report*" (italics added).

The conclusion reached by the Courts of Appeal in *Solovij, supra,* 87 Cal.App.4th 1229, and *Dibble, supra,* 103 Cal.App.4th 496—that the DMV may not consider an *unsworn* report by the *arresting* officers—is certainly arguable. However, given our conclusion in *Lake* that the DMV may consider an *unsworn* report by a *nonarresting* officer, it would be anomalous if it could not also consider an *unsworn* report by the *arresting* officer that is intended to supplement the officer's sworn report. Again, in an administrative hearing,

"[a]ny relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs . . . ." (*Lake*, at p. 458, quoting Gov. Code, § 11513, subd. (c).) "A police officer's report, even if unsworn, constitutes 'the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs.' " (*Lake*, *supra*, 16 Cal.4th at p. 461.) Again, too, we must not lose sight of the reason for the "slight relaxation of the rules of evidence applicable to an administrative per se review hearing," a rationale we reiterated in *Lake*: "[T]he administrative per se laws are intended to provide an efficient mechanism whereby those persons who drive after consuming dangerous amounts of alcohol can have their driver's licenses quickly suspended so as to ensure they will not endanger the public by continuing to drive. [Citation.]" (*Id.* at p. 462.)

To summarize: Section 13380 provides the arresting officer's sworn report will contain "all information relevant to the enforcement action." Therefore, the Legislature clearly anticipates the sworn report will contain all or nearly all of the information necessary to remove the offender's license. In light of this legislative intent, the sworn report cannot be wholly devoid of relevant information. However, so long as a sworn report is filed, it is consistent with the relaxed evidentiary standards of an administrative per se hearing that technical omissions of proof can be corrected by an unsworn report filed by the arresting officer. In this case, the arresting officer filed a sworn report.

Accordingly, we affirm the judgment of the Court of Appeal, and we disapprove of *Solovij v. Gourley*, *supra*, 87 Cal.App.4th 1229, and *Dibble v. Gourley*, *supra*, 103 Cal.App.4th 496, insofar as they are inconsistent with the views expressed herein.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.